LEWEN VS. SMITH.

1. The land system of the United States, was designed to provide, in advance, with mathematical precision, the ascertainment of boundaries; and the second section of the act of Congress of eighteen hundred and five, furnishes the rules of construction, by which all disputes that may arise about boundaries, or the contents of any section or sub-division of a section of land, shall be ascertained.

2. When a survey has been made and returned by the surveyors, it shall be held to be mathematically true, as to the lines run and marked, and the corners established, and the contents returned.

3. Each section, or separate sub-division of a section, is independent of any other section in the township, and must be governed by its marked and established boundaries:

4. And should they be obliterated or lost, recourse must be had to the best evidence that can be obtained, shewing their former situation and place.

5. The purchaser of land from the United States, takes by metes and bounds, whether the actual quantity exceeds, or falls short of the amount estimated by the surveyor.

6. Where a navigable stream intervenes in running the lines of a section, the surveyor stops at that point, and does not continue across the river: the fraction thus made is complete, and its contents can be ascertained.—Therefore, where there is a discrepancy between the corners of a section, as established by the United States surveyor, and the lines as run and marked —the latter does not yield to the former.

7. Whether this would be the case, where a navigable stream does not cross the lines—*Quere.*

Lewen *vs*. Smith.

Error to the Circuit court of Tuskaloosa.

Trespass to try title, tried before Judge Chapman. The plaintiff brought his action of trespass to try titles to a portion of fractional section twenty-six, township twenty-one, range eleven, west, lying north and west of the Warrior river. The plaintiff proved, that he had for many years been in possession of that part of said fraction, lying north and west of said river, claiming title to the same. It appeared, also, that defendant was, and had been for a long time, in possession of section twenty-seven, lying immediately west of said fraction. The premises in dispute, were a small angular gore, containing about nine acres, forming a point at the north-west corner of twenty-six, and being about two chains and seven links wide at the river.

The difficulty was, to determine the true line between sections twenty-six and twenty-seven. The plaintiff claiming the west, and the defendant the east line, to be the true one. The following diagram, copied from the original bill of exceptions, shows the situation of the lands, as disclosed by the witnesses:

Lewen *vs.* Smith.

North West
corner 26.

27

26

Lewen's line, as claimed.

Smith's line as claimed,

Fractional corner

BLACK WARRIOR RIVER.

Supposed corner
at stockade fence
South of River.

35

34

The plaintiff introduced evidence to shew that the south-west corner of said section twenty-seven, was on the south bank of the river, at a point where a certain stockade fence, running between sections thirty-four and thirty-five, terminated at the river; and proved that a straight line from that point to the north-west corner of section twenty-six, would leave the said angular gore on the east of said line.

The defendant's witnesses proved, that the original line, as run by the United States' surveyor, between sections twenty-six and twenty-seven, terminated on the north side of the river.

The court charged the jury, that if they believed from the testimony, that the corner was established, as the fractional corner, by the United States' surveyors, it was to be considered the true corner; and that the line of the original survey was the true line. The court further instructed the jury, that the purchaser of a fractional section took it by metes and bounds, as it was originally surveyed.

The plaintiff's counsel asked the court, to charge the jury, that if they believed from the evidence, the south-west corner of said section twenty-six, was at the point fixed by the plaintiff's witnesses,—then the true boundary line between said sections twenty-six and twenty-seven, would be a straight line from the south-west corner, to the north-west corner of said section twenty-six; which charge the court refused. The plaintiff excepted to the charge given, and the refusal to charge, and assigned the same as error.

*Peck*, for plaintiff in error.

*Porter*, contra.

*Porter*, for the defendant in error, contended—

1. That the returns of the United States surveyor, as to the lines run, corners marked, and the contents, were conclusive; and could not be altered or varied from, by surveys subsequently made—(1 Story's Laws U. States, 422; Walters vs Commons, 2 Porter's R. 38.)

2. That the lines of a section, as thus run by the original surveyor, when a navigable river intervened,—terminated there: that a fraction line and corner were thus produced; and when ascertained, were conclusive of the lines and contents of such fraction, without enquiry as to where the opposite corner of the section was situated—(1 Story's Laws U. S. 422; 2 Ibid, 961.)

ORMOND, J.—The question to be settled, in this case, depends on the true construction of the acts of Congress on this subject. The land system of the United States, seems to have been designed to provide, in advance, with mathematical precision, the ascertainment of boundaries, so as to dry up that fertile source of litigation, as far as practicable.

The act of Congress which contains the first conception of the system, and which is the ground-work of all succeeding acts on that subject, passed in seventeen hundred and ninety-six, prescribes the mode of surveying the public domain—(1 vol. Story's Laws United States, 421.)

In eighteen hundred and five, Congress passed another

law on this subject,—the second section of which furnishes the rules of construction, by which all disputes which may arise about boundaries, or the contents of any section, or sub-division of a section, shall be ascertained.

It is in these words: "The boundaries and contents of the several sections, half sections, and quarter sections of the public lands of the United States, shall be ascertained in conformity with the following principles, any act or acts to the contrary, notwithstanding:

"1. All the corners marked in the surveys, returned by the surveyor of the land south of the Tennessee, respectively, shall be established as the proper corners of sections, or sub-divisions of sections, which they were intended to designate; and the corners of half and quarter sections, not marked on the said surveys, shall be placed as nearly as possible equi-distant from those two corners, which stand on the same line.

"2. The boundary lines actually run and marked in the surveys returned by the surveyor general, or by the surveyor of the land south of the State of Tennessee, respectively, shall be established as the proper boundary lines of the sections or sub-divisions, for which they were intended; and the length of such lines, as returned by either of the surveyors aforesaid, shall be held and considered as the true length thereof; and the boundary lines which shall not have been actually run and marked as aforesaid, shall be ascertained by running straight lines from the established corners to the opposite corresponding corners; but in those portions of the fractional townships where no such opposite corresponding corners

have been or can be fixed, the said boundary lines shall be ascertained, by running from the established corners due north and south, and east and west lines, as the case may be, to the water course, Indian boundary line, or other external boundary, of such fractional township.

" 3. Each section, or sub-division of section, the contents whereof shall have been, or by virtue of the first section of this act, shall be returned by the surveyor general, or by the surveyor of the public lands, south of the Tennessee, respectively, shall be held and considered as containing the exact quantity expressed in such return or returns, and the half sections and quarter sections, the contents whereof shall not have been thus returned, shall be held and considered as containing the one half, or the one fourth part, respectively, of the returned contents of the section of which they make part."

The wisdom of these rules is apparent. Had they not been provided, great confusion would have arisen from the very causes which, at a hasty glance, would seem to constitute the perfection of the system. As the origininal conception contemplated a division of the lands, on mathematical principles, without reference to natural objects as the termini, or tests by which to ascertain or settle a disputed boundary, it would have followed, in after time, when the corners and lines were obliterated, by accident or design, if a mistake had supervened in the original survey, that interminable disputes would have arisen about boundary lines. To prevent this, as far as possible, the law contemplates, that where the survey has been made and returned, that it shall be held to be mathematically true, as to the lines run and mark-

ed, the corners established, and the contents returned. Thus, each section, or separate sub-division of a section, would be independent of any other section in the township, and be governed by its marked and established boundaries. Should they be obliterated or lost, recourse must then be had to the best evidence, which can be obtained, showing their former situation or place.

The question, then, in this case, is resolved into this: Is the land in dispute one of the established divisions, which the second rule provides for? If it be, then the line actually run must govern, notwithstanding an error may have supervened in the original survey; which, however, is not shown in this case, as it does not appear that the marked line does not run due north and south, which would be its course, if mathematically correct.

It appears from the record, that the disputed line, is the boundary line of a fractional section. It is, therefore, a sub-division of a section, of which the lines were run and marked by the United States surveyor, and returned to the land office. The line thus run and marked must be esteemed the true boundary line, in accordance with the principles here laid down. The purchasers of land from the United States, take by metes and bounds, whether the actual quantity exceeds or falls short of the amount estimated by the surveyor.

The argument most strongly urged by the plaintiff's counsel, is, that where there is a discrepancy between the corners, as established by the United States surveyor, and the lines as run and marked, that the latter must yield to the former.

Without determining what weight the argument

would be entitled to, in a case where a navigable stream did not cross the lines, it is clear, that in a case like this, where a stream of that description does traverse the section, it cannot apply. It would be subjecting the survey to a test, which was not applied in the first instance, and which the law did not require to be applied. In surveying the boundary lines of a section, where no river intervened, an error caused by a deviation from the true course, would be immediately discovered, when the surveyor came to close the survey. But if in running any of the lines of a section, a navigable river should intervene, the survey stops at that point on that line, and does not continue across the river. The fraction thus made, is complete in itself, and its contents can be ascertained. This was all the law contemplated, and that it was the course pursued, appears from the field notes of the survey of this fraction returned to the land office, which we have examined, and which are as follow :

"Beginning at the N. W. corner, thence South 73, 50, to a post on the North bank of the river, for which—N. 80, W. 0, 17, box-elder—S. 66, E. 0, 18, do. Thence, with the meanders of the river, S. 74, East, 7 ch. 50—N. 32, East 10, a.—N. 9, W. 20—N. 10, East, 22 ch.—N. 4, W. 24, 50, to a poplar on the South boundary of section 23, thence West 13 ch. 70, to S. W. corner, containing 100 55-100 acres.

It follows, that there was no error in the charge of the court, and the judgment of the court below must be affirmed.